Modern Cooler Company, Employer, and Security Insurance Group, Successor to New Amsterdam Casualty Co., Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Leroy Driscoll, Appellees.

Argued December 6, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

24

*Raymond J. Porreca,* for appellants.

*Frank Carano,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE BLATT, March 17, 1975:

These are appeals by the Modern Cooler Company (employer) from two successive decisions of the Workmen's Compensation Appeal Board (Board) modifying the referee's order which had dismissed the employer's petition to terminate compensation to LeRoy Driscoll (claimant).

On December 21, 1961, the employer entered into an agreement[1] to compensate the claimant for an injury resulting in total disability at a rate of $42.50 per week. On August 6, 1965, the employer filed a petition to terminate compensation on the grounds that the claimant "returned to regular work at the same wages" on or about April 29, 1962. The claimant responded, however, that he still suffered partial disability from the injury.

The factual background of this case is best summarized by the referee's findings following hearings held

---

1. Pursuant to The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

between December 22, 1966 and February 29, 1973 regarding the termination petition:

"1. Claimant suffered a torn rotator cuff in his right shoulder due to an accident sustained on November 27, 1961 when claimant and a fellow employee were lifting an ice cube machine weighing four hundred (400) pounds to a height of forty-six (46) inches, while in employ of defendant, (Modern Cooler Company) upon which the Agreement of Compensation, above referred to, is based.

"2. Claimant returned to his former employment as a refrigeration—air conditioning mechanic on or about April 30, 1962 and continued to work in that capacity at the same hourly rate of pay until December 7, 1962.

"3. Claimant was given less work by his employer than heretofore, commencing about October 19, 1962 and such reduced work resulted in a decrease, because of the claimant's impaired physical condition, in claimant's earnings, for this employer from his wage of $174.00 per week at the time of the accident to $104.40 per week.

"4. Claimant was separated from his position at defendant-employer on December 7, 1962 and because of his limited physical capacity was unemployed, except for sporadic jobs, until August 12, 1963 when he became employed as a refrigeration mechanic for the United States Naval Development Center.

"5. Claimant's wages at the United States Naval Development Center at the time of his initial employment there, was $2.93 per hour for a forty hour week as compared to $4.35 per hour earned during his employ with defendant, or about a 33% decrease in earning power.

"6. Claimant's duties at his aforesaid new employment do not require lifting of over fifty pounds. A limitation of 150 pounds lifting was placed upon

claimant by the defendant's orthopedic surgeon who had repaired claimant's right rotator cuff which had been injured in his accident of November 27, 1961.

"7. Claimant was required to lift equipment in excess of one hundred fifty pounds in performing his duties for defendant.

"8. Defendant and/or its insurance carrier have failed to show that work of a selected nature limited to less than one hundred fifty pounds of lifting in the refrigeration—air conditioning industry was available to a person having claimant's physical condition and vocational training, at a wage rate equal to claimant's former earning capacity."

In denying the employer's termination petition the referee set forth a compensation schedule, which was amended by the Board in two successive decisions so as to include partial disability payments running from October 19, 1962 to July 4, 1969. The employer has appealed from both decisions, the first of which is now rendered moot inasmuch as the second suspended it.

On the termination petition the employer must sustain the burden of proving that the disability for which he earlier agreed to make payments now no longer exists. *Foster Wheeler Corp. v. Workmen's Compensation Appeal Board,* 13 Pa. Commonwealth Ct. 45, 317 A.2d 922 (1974). And where the referee and the Board have found against the party having the burden of proof, review by this Court is to determine whether the findings are consistent with each other and with the conclusions of law, and the Board's order can be sustained without a capricious disregard of competent evidence. *Periodical Press Corp. v. Workmen's Compensation Appeal Board,* —— Pa. Commonwealth Ct. —— 331 A.2d 605 (1975).

The employer argues here that a finding of partial disability is not supported in the record and that, even if such finding were supported, the method here used for the computation of benefits was in error. In determin-

ing the existence of a partial disability the referee may consider such factors as the nature of the claimant's anatomical disability, his mental outlook, his industrial background, his age, and education, the occupation he could perform where his particular physical impairment is not a total bar, and whether such work exists. *Lewis v. Philadelphia Company*, 213 Pa. Superior Ct. 42, 245 A.2d 719 (1968). Once a disability is found, the benefits payable are then determined by the claimant's loss of earning power. Section 306(b) of The Pennsylvania Workmen's Compensation Act, *as amended*, by the Act of September 30, 1961, P.L. 1762. To support its position here, the employer argues that the claimant returned to the same work as before the injury, at the same wage rate, and was discharged only as a result of a seasonal industry wide work slowdown. Indeed the record could support such a finding. The claimant, however, presented contradictory evidence along with medical testimony as to his anatomical disability. Dr. Kaplan, his treating physician, surgically repaired the torn shoulder cuff in January of 1962 and the claimant did in fact return to work at his same wage rate. Dr. Kaplan testified, however, that, in spite of the success of the repair, the claimant would risk losing its benefit if he were to be subjected to constant exertion through the lifting of weights in excess of 150 pounds. The claimant testified that such lifting was necessary in his work and that his inability to perform as before the injury caused him to be laid off. Within their functions as fact finders, the compensation authorities weigh the evidence and evaluate the credibility of the witnesses. Having done so here, they then arrived at findings of fact which support their legal conclusion that the employer failed to sustain his burden of proving the absence of disability. Inasmuch as there is evidence to support those findings, they cannot be disturbed on appeal.

The employer here also raises many issues as to the amount of compensation awarded and as to the formula used to compute it. The act provides that compensation is to be sixty-six and two-thirds per centum of the difference between the wages of the injured employee before his accident and his earning power thereafter. Section 306(b) of The Pennsylvania Workmen's Compensation Act, *as amended,* by the Act of September 30, 1961, P.L. 1762. Among the factors which may be considered as determining earning power are the nature of the claimant's anatomical disability and the actual wages he received after the injury. *Benedict v. Fox,* 192 Pa. Superior Ct. 197, 159 A.2d 756 (1960). Once again, it is within the discretion of the compensation authorities to assign the weight to be given to these factors, and here the claimant's physician testified to an anatomical disability of 20 percent improving to 10 percent. The award of benefits, however, was based on the actual difference in earnings before and after the injury. This resulted in a finding of 33 percent initial decreased earning power which improved as the claimant received wage increments with his new position. Inasmuch as the burden was upon the employer to show that work with limited lifting was available at a higher wage and because apparently no such evidence was credibly produced, the compensation authorities did not err in placing greater weight upon the claimant's actual earnings than upon his percentage anatomical disability in computing his earning power. The payments as computed must, therefore, stand affirmed.

The schedule of payments as modified by the Board included compensation at varying rates over different periods from October 18, 1962 to July 4, 1969. This included payments for a time when the claimant was still with the employer at a reduced workload, at another time thereafter when he was also receiving unemploy-

ment compensation benefits, and at still later times when he again received work in the same line of business with the United States Naval Development Center where he was not subjected to heavy lifting. The employer further argues that benefits were provided for 350 weeks during which the claimant suffered a loss in earning power, and that, because the claimant worked with his disability without a loss of earning power from April 30, 1962 to October 19, 1962, the payments extended beyond the first 350 weeks of disability, whereas they should have been limited to that 350 week period. The statute in effect at the time, however, provided that payments might be made for a maximum of *350 weeks during* the disability rather than for the first *350 weeks of* the disability.[2] The approved duration of the award of payments, therefore, was not in error.

That payments were likewise approved for the period while the claimant was receiving unemployment compensation, i.e. from December 8, 1962 to at least March 8, 1963, was also not in error. Such overlapping coverages are clearly permitted. *Whitehead v. Casey Building Wreckers, Inc.*, 6 Pa. Commonwealth Ct. 256, 294 A.2d 215 (1972).

It follows, therefore, that we must issue the following:

ORDER

AND NOW, this 17th day of March, 1975, it is hereby ordered that judgment be entered on behalf of LeRoy Driscoll and against the Modern Cooler Company and/or Security Insurance Group whereby they are directed to pay to LeRoy Driscoll workmen's compensation benefits for partial disability in accordance with the following schedule:

---

2. Section 306(b) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended* by the Act of February 28, 1956, P.L. (1955) 1120, §1.

| For the Period | At the Weekly Rate |
|---|---|
| October 19, 1962 to December 7, 1962 | $21.41 |
| December 8, 1962 to August 11, 1963 | 32.50 |
| August 12, 1963 to November 9, 1963 | 32.50 |
| November 10, 1963 to February 8, 1964 | 32.50 |
| February 9, 1964 to May 9, 1964 | 32.50 |
| May 10, 1964 to November 7, 1964 | 32.50 |
| November 8, 1964 to February 6, 1965 | 31.67 |
| February 7, 1965 to August 6, 1965 | 30.93 |
| August 7, 1965 to November 6, 1965 | 27.47 |
| November 7, 1965 to February 5, 1966 | 26.31 |
| February 6, 1966 to November 5, 1966 | 25.33 |
| November 6, 1966 to February 4, 1967 | 23.37 |
| February 5, 1967 to November 4, 1967 | 22.13 |
| November 5, 1967 to February 3, 1968 | 17.56 |
| February 4, 1968 to November 2, 1968 | 18.40 |
| November 3, 1968 to February 1, 1969 | 13.68 |
| February 2, 1969 to July 4, 1969 | 6.13 |

Interest is to be assessed on the above Award at a rate of six percent per annum.