D & T Brooks, Inc. and Liberty Mutual Insurance Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Carl C. Knight, Respondents.

Submitted on briefs, September 15, 1978, to Judges CRUMLISH, JR., WILKINSON, JR. and CRAIG, sitting as a panel of three.

*Thomas J. Ferris,* for petitioners.

*J. Frank Kelker,* with him *Kelker and Kelker,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE WILKINSON, JR., October 23, 1978:

This is an appeal by the employer and its insurance carrier (petitioners) from an affirmance by the Workmen's Compensation Appeal Board (Board) of an order of the referee reinstating the compensation agreement between the petitioners and respondent (claimant).[1] We affirm.

The instant petition stems from a compensable accident which occurred on January 13, 1966.[2] The original compensation agreement dated January 31, 1966, was subsequently modified by two supplemental agreements, the first dated December 19, 1966 and the second dated March 15, 1968, which suspended total disability compensation for an aggregate period of approximately 34 weeks representing the time claimant returned to work with no loss of earning power. On May 23, 1968, claimant filed a reinstatement petition and on October 25, 1968, pursuant to a stipulation of facts by the parties, the referee ordered the agreement reinstated, modified to reflect a partial disability, and

---

[1] Pursuant to Section 413 of The Pennsylvania Workmen's Compensation Act (Act) Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §772.

[2] Claimant sustained two fractured ribs in the accident.

ordered compensation payable for a period· of 350 weeks commencing April 2, 1968. This order was modified by a third supplemental agreement dated December 6, 1968, which suspended payments as of November 27, 1968 and a fourth supplemental agreement, dated May 11, 1971 which provided for reinstatement of total disability payments from November 21, 1970 to November 30, 1970 and suspending payments when claimant returned to work at no loss of earning power.[3] The last payment was made on June 2, 1971.

On August 15, 1974, claimant filed the reinstatement petition at issue here. Petitioners answered alleging claimant's petition was not timely filed and denying a causal connection between claimant's present injury and the compensable accident. The only evidence presented at the referee's hearing held on September 19, 1974 was that of the treating physician who testified claimant was totally disabled due to a back injury which he attributed to the January 13, 1966 injury. The physician further testified that he had treated claimant from May 1971 through November 1975 for heart, lung and back maladies; he opined that claimant was no longer disabled due to heart and lung conditions, but that claimant was disabled due to a continuing degenerative arthritic condition of his back which had existed prior to the January 13, 1966 injury and that this condition was aggravated by that injury

---

[3] The record discloses the following history of compensation up to and including the date of the filing of the reinstatement petition:

| | | | |
|---|---|---|---|
| 1/17/66 through | 11/1/66— | 41 2/7 | weeks—Total |
| 11/2/66 through | 11/16/66—. | 2 1/7 | weeks—Suspension |
| 11/17/66 through | 8/23/67— | 40 | weeks—Total |
| 8/24/67 through | 4/1/68— | 31 5/7 | weeks—Suspension |
| 4/2/68 through | 11/26/68— | 34 1/7 | weeks—Partial |
| 11/27/68 through | 11/20/70— | 103 2/7 | weeks—Suspension |
| 11/21/70 through | 11/29/70— | 1 2/7 | weeks—Total |
| 11/30/70 through | 8/15/74— | 194 | weeks—Suspension |

and disc surgery in June 1966 following a lumbo-sacral sprain which occurred in March 1966.

Based on this testimony, the referee found that claimant "became totally disabled as a result of low back pain and a collapsing left leg and that said disability resulted from his January 13, 1966 injuries and the subsequent disc and fusion surgery necessitated by said injury." The referee also found the petition was timely filed applying the 500-week period for compensation of partial disability.[4]

On appeal the Board affirmed the decision of the referee, but deleted his findings regarding the applicability of the 500-week period, concluded that the 350-week period should apply and reasoned that since claimant had utilized only 34 1/7 weeks of that period for actual disability, the petition was timely filed.

The first issue that confronts us is whether claimant's petition was indeed timely filed.

Section 413 of the Act empowers the referee to reinstate an award or agreement if filed within two years of the date of the most recent payment of compensation provided that "where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at anytime during the period for which compensation for partial disability is payable. . . ." Section 413 of the Act, 77 P.S. §772. This exception to the general rule of the two-year limitation was expressly

---

[4] Effective May 1, 1972 the statutory period for partial disability was extended from 350 weeks to 500 weeks. Section 306(b) of the Act, *as amended*, added by Section 12 of the Act of March 29, 1972, P.L. 159, *as amended*, 77 P.S. §512.

Although the Board reversed the referee with regard to the applicability of the 1972 amendment to Section 306 which extended the maximum benefit period for partial disability from 350 to 500 weeks, this determination has not been challenged by the claimant on review.

recognized by this Court in *Falls-Overfield Vocational School District v. Davis,* 8 Pa. Commonwealth Ct. 63, 301 A.2d 118 (1973) upon which petitioners rely. Our decision in *Falls-Overfield, supra,* recognized the rule, correctly stated by petitioners, that the exception for suspensions engrafted by case law and restated by the legislature applies only to suspensions due to a return to earning power rather than a change in disability. This rule, however, does not aid petitioners cause since it is apparent, despite assertions to the contrary, that the suspensions occurred in this case because claimant returned to work rather than due to a change in the disability.[5]

Moreover, we must agree with the Board that our decision in *Modern Cooler Co. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 22, 333 A.2d 811 (1975) ineluctably leads to the conclusion that for purposes of computing the period for which compensation for partial disability is payable, pursuant to Section 413 of the Act, periods of suspension are not to be included. In *Modern Cooler, supra,* this Court held that the 350-week period is computed by the number of weeks during which such disability actually exists and compensation paid, rather than the first 350 weeks following the actual injury. Thus, in this case petitioner under the May 11, 1971 award had received 34 1/7 weeks of partial disability at the time the petition for reinstatement was filed and would have been entitled to an additional 312 6/7 weeks under the terms of the referee's order of September 25, 1968

---

[5] The full text of the stipulation in this agreement reads:
It is agreed that Carl C. Knight was able to return to work 11/30/70 earning as much as or in excess of his former weekly wage. The claimant suffers a small residual disability not reflected in the loss of earning power and compensation payments are therefore suspended until the disability reflects itself in the loss of earning power.

and the subsequent modification by supplemental agreements between the parties when the claimant returned to work. Where, as here, the employer is relieved of the payment of compensation during the course of this period, when the claimant resumes full earning power, albeit with a continuing disability, the period of suspension inures entirely to the benefit of the employer and he should not thus be heard to complain if subsequently within the statutory time for payment, the changed status of the employee's earning power revives his liability. *See Zupicick v. P. & R.C. & I. Co.*, 108 Pa. Superior Ct. 165, 164 A. 731 (1933). By reason of the foregoing we are unpersuaded by petitioners' assertions that the reinstatement petition was untimely filed.

Secondly, petitioners raise the issue of whether there was sufficient substantial evidence to support the finding that claimant's total disability was causally related to the injury on January 13, 1966. With respect to such evidence, it is only testimony which is so uncertain, inadequate, equivocal, ambiguous or contradictory as to make administrative findings of fact mere conjecture that fails to meet the test of substantiality in administrative proceedings. *Novaselec v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 550, 332 A.2d 581 (1975). The petitioners' brief is replete with reasons why the testimony of claimant's treating physician is inadequate, but in our view all of these arguments go to the credibility and probative value of this testimony including the physician's expert opinion on the ultimate issue of causation. As was stated by this Court in *Workmen's Compensation Appeal Board v. Baldwin-Lima-Hamilton Corp.,* 24 Pa. Commonwealth Ct. 403, 406, 356 A.2d 375, 377 (1976), "[T]he weight to be accorded testimony and the inferences to be drawn therefrom are for

the referee. This Court will not determine the probative value of testimony even if, on the same record, it might have reached a different result.''

Accordingly, we will enter the following

ORDER

AND Now, October 23, 1978, the order of the Workmen's Compensation Appeal Board at Docket No. A-72288, dated July 14, 1977, affirming as amended the referee's reinstatement order and award, is hereby affirmed and it is directed that judgment be entered in favor of Carl C. Knight and against D & T Brooks, Inc., and/or its insurance carrier, Liberty Mutual Insurance Company, in the amount of $52.50 per week beginning September 23, 1974, together with interest payable at six per cent per annum on deferred payments of compensation from the date due to the date paid, in accordance with the terms of The Pennsylvania Workmen's Compensation Act.

D & T Brooks, Inc., and/or its insurance carrier, is also directed to make payment of additional compensation at the rate of $7.50 per week pursuant to and in accordance with the provisions of Section 306(h) of the Workmen's Compensation Act.