Paul Yockey, Petitioner v. Workmen's Compensation Appeal Board (Pacemaker Driver Service), Respondents.

Submitted on briefs November 17, 1983, to Judges Rogers, MacPhail and Barry, sitting as a panel of three.

*Henry Haefner,* for petitioner.

*Sharon F. Harvey, Swartz, Campbell & Detweiler,* for respondent, Pacemaker Driver Service.

OPINION BY JUDGE ROGERS, December 29, 1983 :

Paul Yockey, a workmen's compensation claimant, has appealed from an order of the Workmen's Compensation Appeal Board affirming the action of a referee granting his employer's petition for termination of compensation. The issue is whether the referee's conclusion that the employer had met its burden of showing that the claimant's disability had ceased is supported by substantial evidence.

The claimant was injured on October 13, 1978 when the tractor-trailer in which he was then riding left the road because the driver, a co-worker, fell asleep. The employer began paying disability benefits on account of the claimant's internal injuries under a notice of compensation payable. On February 5, 1981, the employer filed a petition for termination of compensation alleging that the claimant's disability had ceased on December 30, 1980.

The referee heard the testimony of the claimant and a friend and received the transcribed depositions of four doctors.

The claimant testified that he continued to suffer from a fear of heights, an apprehension of driving as a passenger with other people, inability to sleep, and that problems with his stomach, back and legs had greatly diminished his ability to engage in any physical activity.

The medical witnesses differed on their opinions as to whether the claimant's disability had ceased. Dr. Roy S. Temeles, a Board certified orthopedic surgeon, examined the claimant on December 30, 1980. During the examination, the claimant provided Dr.

Temeles with a medical history which included a description of the accident, the course of treatment that he had received, and the names of the doctors who had treated him. Dr. Temeles also reviewed a myelogram and x-rays and conducted his own physical examination in order ''to determine the presence or absence of pain and the findings of function or limitation in the so-called musculoskeletal system.'' This examination consisted of testing the claimant's ability to walk on his toes and heels, to squat, jump, and bend at both the lower extremities and the lumbar spine and an evaluation of the claimant's neurological system to determine muscle tone, muscle function, presence and absence of reflection, sensation, and the ability to stretch and move the sciatic nerve. Dr. Temeles concluded that ''[a]ll of the tests . . . and all of the performances . . . were, by absolute definition of my own part, negative and normal, or meaning, that there were no findings to indicate at the time of that examination Mr. Yockey was in any pain, suffering any disability to his musculoskeletal system'' and that he ''believe[d] he [the claimant] could have returned to driving a tractor-trailer.''

Dr. Temeles' opinion was contradicted by the opinions of Dr. Harold F. White, a board certified general practitioner, Dr. Leon Kalson, a psychologist, and Dr. William M. Lundie, a specialist in internal medicine. Dr. White, who was the claimant's physician for more than fifteen years and who treated him for the injuries received from the accident, testified that the claimant will ''never be able to go back to truck driving'' because of ''a deep psychological problem'' that has caused him to be ''nonproductive'' and unable to ''work around people.'' Dr. Kalson stated that based on his test findings and clinical impression that he ''felt that he [the claimant] could not return

to the heavy kind of truck driving he had been doing because of the stress involved in that job but it would not contraindicate lighter types of driving jobs." The fourth medical expert, Dr. Lundie, did not express an opinion about whether the claimant could return to his job but did testify that his ".final impression was that he has had [sic] spastic colon, that he was an anxious man and depressed at times, that part of it was situationally related to the accident that he had."

The referee reviewed and summarized all the testimony and concluded that "sufficient competent evidence" existed upon which to find the claimant "to be fully and completely recovered from any physical impairment or disability arising out of the work injury of 10-13-78." The referee discounted the psychologist's evidence because that expert did not testify that the claimant's psychological problem was related solely to the accident, he noted that the internist did not express an opinion as to the degree of the claimant's disability, and he rejected the family doctor's opinion as lacking credibility. In affirming the referee, the Workmen's Compensation Appeal Board noted that the referee gave reasons for rejecting the testimony of the claimant's medical witnesses and concluded that "it is apparent that the Referee has performed his function of resolving conflicting medical evidence . . . [by] accept[ing] the testimony of the Defendant's Dr. Roy S. Temeles; to wit, that the claimant has fully recovered from his work-connected injury."

It is within the exclusive province of the referee as fact-finder to resolve conflicting medical evidence. *Grimm v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 582, 434 A.2d 879 (1981). The referee resolved the conflicting medical testimony

given in this case by finding Dr. Temeles' opinion to be most credible. "[I]t is only testimony which is so uncertain, inadequate, equivocal, ambiguous or contradictory as to make administrative findings of fact mere conjecture that fails to meet the test of substantiality. . . ." *D & T Brooks, Inc. v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 223, 228, 392 A.2d 895, 898 (1978). Dr. Temeles' opinion that the claimant's disability had ceased was unequivocal and it was substantial evidence upon which the referee could base his conclusion that the claimant's disability had ceased.

Order affirmed.

ORDER

AND Now, this 29th day of December, 1983, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.