# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Davidson Construction,       :
           Petitioner       :
      :
           v.       :    No. 1414 C.D. 2016
      :    Submitted: January 6, 2017
Workers' Compensation Appeal       :
Board (Butcher, Uninsured       :
Employers Guaranty Fund/ACS       :
Claims Service and State Workers'       :
Insurance Fund),       :
           Respondents       :


BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** Judge
               **HONORABLE JULIA K. HEARTHWAY,** Judge
               **HONORABLE DAN PELLEGRINI,** Senior Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: April 6, 2017**


Davidson Construction (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision and Order of a Workers' Compensation Judge (WCJ) that granted the Claim and Penalty Petitions filed by Lamont Butcher (Claimant). On appeal, Employer argues that: (1) the WCJ erred in finding that Claimant was not fully recovered and was entitled to ongoing benefits; (2) the WCJ should have suspended Claimant's benefits because Claimant refused available job offers within Claimant's work restrictions; and (3) the WCJ abused his discretion by imposing a

penalty based on Employer's lack of workers' compensation insurance.[1] Discerning no error or abuse of discretion, we affirm.

Claimant filed the Claim Petition against Employer on June 9, 2014, averring that he sustained work-related injuries to his head, neck, right shoulder, back, and both knees when he fell at work on May 16, 2014. (Claim Petition at 2.) On the same day, Claimant filed the Penalty Petition claiming that Employer violated Section 406.1 of the Workers' Compensation Act[2] (Act) by not filing any documents with the Bureau of Workers' Compensation (Bureau) despite having timely notice of Claimant's injuries. (Penalty Petition at 2-3.) Thereafter, on July 25, 2014, Claimant filed another Claim Petition seeking benefits from the Uninsured Employers Guaranty Fund (UEGF) because Employer did not maintain workers' compensation insurance at the time of his injury. (UEGF Claim Petition.) UEGF filed an answer denying the material allegations. All three petitions were assigned to a WCJ for disposition.

The WCJ held multiple hearings,[3] at which Claimant twice testified in person and offered the deposition testimony of his treating physician, Andrew Lipton, D.O. Claimant testified[4] that he worked for Employer as a laborer earning $900 per week. Claimant fell while working on a construction site on May 16, 2014, injuring "his head, neck, right shoulder, low back and both knees." (WCJ

---

[1] The Uninsured Employers Guaranty Fund/ACS Claims Service and the State Workers' Insurance Fund are not participating in this appeal.

[2] Act of June 2, 1915, P.L. 736, added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 717.1.

[3] Claimant and UEGF were represented by counsel before the WCJ, Employer was not. However, Employer's owner attended the hearings, but not the depositions of the medical experts.

[4] Claimant testified on August 25, 2014 and July 9, 2015. Claimant's testimony is summarized in findings of fact 3 and 4.

Decision, Findings of Fact (FOF) ¶ 3b.) After informing Employer of the fall, he completed an accident report and went to the hospital. Claimant now is being treated by Dr. Lipton, and he "does not feel able to return to work." (Id. ¶ 3d.) Claimant acknowledged that he received job offers from Employer on July 21, 2014 and on November 20, 2014, but "did not return to work after the [first] job offer because '[he] was still hurting'" or after the second job offer because he "couldn't carry something heavy" and "did not believe that he could physically glaze windows." (Id. ¶ 4c.) Claimant indicated that his right knee injury has resolved, but he continued to have trouble with his right shoulder and lower back.

Dr. Lipton, who is board-certified in family medicine and neuro-musculoskeletal medicine, began treating Claimant on May 23, 2014, and has treated him regularly since.[5] (FOF ¶ 5; R.R. at 8.) Based on his physical examinations of Claimant and review of Claimant's medical records, diagnostic studies, and Claimant's description of the fall, Dr. Lipton diagnosed "Claimant with cervical disc disease, lumbar disc disease, cervical radiculitis, right shoulder pain and low back pain" all related to the May 16, 2014 work injury. (FOF ¶ 5e.) Dr. Lipton opined that Claimant has not fully recovered from these injuries and was incapable of performing his pre-injury position, but could possibly perform sedentary work.

UEGF presented the fact testimony of Employer's Owner (Owner), and the deposition testimony of John Donahue, M.D. Owner testified[6] that he hired Claimant in February 2014, and he paid Claimant a total weekly salary of $625.00.

---

[5] Dr. Lipton's deposition testimony can be found from pages 4 to 38 of the reproduced record. His testimony is summarized in finding of fact 5.

[6] Owner testified live before the WCJ on July 9, 2015. Owner's testimony is summarized in finding of fact 12.

He acknowledged that Claimant worked for Employer on May 16, 2014, and told him about Claimant's fall on that day. Owner described two letters Employer sent to Claimant on July 21, 2014,[7] and November 20, 2014, calling him back to work on a modified duty basis, but stated that Claimant did not return to work. The July 21, 2014 and November 20, 2014 letters offering Claimant work were submitted into the record. (Id. ¶¶ 11-12; R.R. at 158-59.)

Dr. Donahue,[8] who is board-certified in orthopedic surgery, performed an independent medical examination (IME) of Claimant on October 14, 2014. After performing a physical examination and obtaining from Claimant his medical history, a history of the incident, and his related medical treatment, Dr. Donahue opined that "Claimant possibly sustained a right shoulder strain, right knee strain and left knee strain" but no other injuries, and had fully recovered from those injuries as of the October 14, 2014 IME. (Id. ¶ 7e.) Dr. Donahue released Claimant to full duty work without work-related restrictions.

The WCJ found Claimant's testimony credible except as to his wages, which the WCJ found were $125.00 per day as credibly testified to by Owner. (Id. ¶¶ 13-14.) Thus, the WCJ "accept[ed] Claimant's testimony that he was physically unable to perform either his pre-injury or modified job duties for the Employer since the work injury." (Id.) The WCJ found Owner credible on the issue of Claimant's wages, but, generally, found that testimony credible only "to the extent that it does not conflict with the Claimant's otherwise credible testimony." (Id. ¶

---

[7] The WCJ's finding of fact indicates that this letter was sent on June 21, 2014, and the parties refer to this as the June 21, 2014 letter. (FOF ¶ 12g.) However, the letter itself is dated July 21, 2014. (R.R. at 158.) We will refer to this as the July 21, 2014 letter.

[8] Dr. Donahue's deposition testimony can be found from pages 85 to 129 of the reproduced record. His testimony is summarized in finding of fact 7.

4

14.) Finally, the WCJ found Dr. Lipton's testimony more credible than Dr. Donahue's testimony, noting that Dr. Lipton was Claimant's treating physician, and his opinions were supported by the treatment records and diagnostic studies, as well as the mechanism of Claimant's injury and Claimant's complaints. (Id. ¶ 15.)

Based on his findings of fact and credibility determinations, the WCJ found that Claimant sustained a work-related injury "in the nature of cervical disc disease, lumbar disc disease, cervical radiculitis, right shoulder pain and low back pain," is not fully recovered, and is totally disabled as of May 16, 2014 and ongoing. (Id. ¶¶ 17-18.) Claimant's average weekly wage was $625.00, which results in a compensation rate of $466.00 per week. (Id. ¶ 19.) The WCJ further found that Employer did not file any Bureau documents as required by the Act and, therefore, granted the Penalty Petition. (Id. ¶ 24.) Accordingly, the WCJ found Employer, who was uninsured at the time Claimant's work-related injuries occurred, "primarily liable" to pay Claimant temporary total disability (TTD) benefits beginning May 16, 2014, and ongoing, his reasonable and necessary medical expenses related to his work-related injuries, and a 10 percent penalty. (WCJ Order.) The WCJ concluded that UEGF was "secondarily liable" for the disability benefits and medical expenses if Employer did not make payments as directed within 30 days, but "retain[ed] its statutory rights of reimbursement against the Employer." (Id.)

Employer appealed to the Board, arguing that: (1) the WCJ erred in not suspending Claimant's benefits based on the July 21, 2014 job offer that was within Dr. Lipton's work restrictions; (2) the WCJ erred in not finding Claimant fully recovered from his work-related injuries based on Dr. Donahue's opinions because Dr. Lipton could not offer an opinion of Claimant's condition after August

5

27, 2014; and (3) the WCJ abused his discretion in awarding a penalty based on Employer's not having workers' compensation insurance. The Board affirmed the WCJ's Order. Because the WCJ, in his role as fact finder, credited Claimant's testimony that he could not return to work at a modified position due to his back pain, the award of ongoing benefits was supported. (Board Op. at 9.) The WCJ had credited Dr. Lipton's opinions over those of Dr. Donahue which supported the finding that Claimant was not fully recovered. (Id. at 10.) Observing that the WCJ had not awarded the penalty based on Employer's not having workers' compensation insurance, the Board found no abuse of discretion in assessing a 10 percent penalty because Employer did not file any of the documents with the Bureau required by Section 406.1 of the Act. Employer, who is now represented by counsel, petitions this Court for review.[9]

On appeal, Employer asserts that the WCJ should not have awarded ongoing wage loss benefits based on Dr. Lipton's testimony and Claimant's subjective complaints of ongoing pain. Employer contends that the WCJ should have credited Dr. Donahue's testimony that Claimant was fully recovered as of October 14, 2014, rather than Dr. Lipton's testimony because Dr. Lipton last examined Claimant on August 27, 2014. Therefore, according to Employer, Dr. Donahue, was "the only doctor in a position to assess Claimant's injuries as of" October 14, 2014. (Employer's Br. at 12.) Employer also argues that because the WCJ did not believe Claimant's testimony about his wages, "Claimant's credibility was clearly in question and his testimony concerning" his continuing injuries "cannot be

_____

[9] "Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence." City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock), 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

6

believed as a matter of law over Dr. Donahue's assessment of his injuries." (Employer's Br. at 13.)

In a claim petition proceeding, "the burden of establishing a right to compensation and of proving all necessary elements to support an award rests with the claimant." Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.), 942 A.2d 939, 945 (Pa. Cmwlth. 2008). A "claimant must establish that h[is] injury was sustained during the course and scope of employment and is causally related thereto," as well as the length of the claimant's disability, i.e., loss of earning power. Id. "[I]t has long been recognized that the WCJ has the exclusive authority to make findings of fact and credibility determinations" and, as the ultimate fact finder, the WCJ is "'the exclusive arbiter of credibility and evidentiary weight.'" Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043, 1052 (Pa. 2003) (quoting Thompson v. Workers' Comp. Appeal Bd. (USF & G Co. and Craig Welding & Equip. Rental), 781 A.2d 1146, 1150 (Pa. 2001)). A "WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." Joy Global, Inc. v. Workers' Comp. Appeal Bd. (Hogue), 876 A.2d 1098, 1103 (Pa. Cmwlth. 2005). These determinations are not subject to appellate review. Id. However, testimony that "is so uncertain, inadequate, equivocal, ambiguous or contradictory as to make administrative findings of fact mere conjecture . . . fails to meet the test of substantiality." D & T Brooks, Inc. v. Workmen's Comp. Appeal Bd. (Knight), 392 A.2d 895, 898 (Pa. Cmwlth. 1978).

The WCJ, acting as fact finder, weighed the expert testimony in this matter, chose to credit Dr. Lipton's opinions, and provided objective bases for these determinations that allows for appellate review. Employer's contention that "Dr.

Lipton was unaware of Claimant's progress beyond August of 2014" and, therefore, his opinions as to Claimant's condition as of October 14, 2014, were rendered "inadequate to support the ongoing TTD claim as a matter of law" is not correct. (Employer's Br. at 12.) Upon review, the premise of Employer's challenge to the adequacy of Dr. Lipton's testimony is not supported by the record. Dr. Lipton was aware of Claimant's condition as of October 14, 2014, having testified by deposition on that day that he had treated Claimant in his office on October 13, 2014, had future treatments scheduled for Claimant, and Claimant continued to receive physical therapy for the work-related injuries. (R.R. at 17, 19, 23.) Dr. Lipton specifically testified, on October 14, 2014, that Claimant was not fully recovered, could not return to his pre-injury job, and had not been discharged from Dr. Lipton's care. (Id. at 19.) This credited testimony supports an award of ongoing benefits.

With regard to Employer's assertion that the WCJ could not solely rely on Claimant's testimony to rebut Dr. Donahue's opinions, the WCJ did not do so. He relied on Dr. Lipton's testimony as well as Claimant's testimony. Moreover, Employer's contention that the WCJ should not have credited Claimant's testimony that he has not fully recovered because other portions of Claimant's testimony were found to be not credible is contrary to well-settled law. A WCJ can "accept or reject the testimony of any witness . . . in whole *or in part*." Joy Global, Inc., 876 A.2d at 1103 (emphasis added). Here, the WCJ reviewed Claimant's testimony in its entirety and, while he did not credit Claimant's statements regarding his wages, the WCJ accepted as credible the remainder of Claimant's testimony. (FOF ¶ 13.) That determination is not subject to appellate review. Joy Global, Inc., 876 A.2d at 1103. Claimant's credited testimony

8

established that, other than his right knee injury, he had not recovered from his other work-related injuries and he could not physically perform either his pre-injury position or the modified duty positions Employer offered. (FOF ¶¶ 3-4.) We cannot, as Employer requests, usurp the role of the WCJ and reweigh the evidence.[10]

Employer next argues that Claimant's benefits should have been suspended as of July 21, 2014 or November 20, 2014, based on its offer of work within Claimant's work restrictions. "A suspension of disability benefits is appropriate where the work injury no longer impairs the claimant's earning power." Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.), 126 A.3d 394, 401 (Pa. Cmwlth. 2015). Once a claimant demonstrates a loss of earning power as a result of a work-related injury, the initial "burden of proving that suitable employment is available" within the claimant's work restrictions is on the employer. Presby Homes and Servs. v. Workers' Comp. Appeal Bd. (Quiah), 982

---

[10] Employer includes an assertion that the WCJ incorrectly placed the burden on it to show that Claimant was fully recovered. However, once a claimant establishes that a work-related injury resulted in a loss of earning power, the claimant has established a right to benefits and "the burden properly shift[s] to the [e]mployer to show why its request for a suspension [or termination] of those benefits should be granted." Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties), 99 A.3d 397, 408 (Pa. 2014); see also Vista Int'l Hotel v. Workmen's Comp. Appeal Bd. (Daniels), 742 A.2d 649, 658 n.11 (Pa. 1999). "An employer seeking to terminate a claimant's benefits must prove that a claimant's disability has ceased, or that any existing injury is not the result of the work-related injury" by presenting competent and unequivocal medical evidence of full recovery. O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.), 29 A.3d 50, 53 (Pa. Cmwlth. 2011). Here, Claimant met his initial burden of proof because the WCJ credited Claimant's evidence that he had sustained a work-related injury and was disabled as a result. Cruz, 99 A.3d at 408; Coyne, 942 A.2d at 945. If Employer wanted to assert that Claimant had fully recovered as a defense, Employer bore the burden of proving that defense. Cruz, 99 A.3d at 408; Vista Int'l Hotel, 742 A.2d at 658 n.11. Although Employer presented evidence to support its claim of full recovery, the WCJ did not credit that evidence, choosing instead to credit the conflicting evidence presented by Claimant.

A.2d 1261, 1264 & 1264 n.2 (Pa. Cmwlth. 2009). "It is then up to a workers' compensation judge to determine whether the claimant can actually perform the job in question." Gen. Elec. Co. v. Workers' Comp. Appeal Bd. (Myers), 849 A.2d 1166, 1172 (Pa. 2004) (opinion announcing judgment of Court) (citing Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.), 532 A.2d 374, 379-80 (Pa. 1987)).

We find no error in the WCJ not suspending Claimant's benefits based on these job offers. The July 21, 2014 letter contained no description of the offered position and the November 20, 2014 letter offered Claimant a position "glazing windows, lifting weight would be no more than [three] pounds at one time." (FOF ¶ 11 (internal quotation omitted).) However, Owner also testified that the November 20, 2014 modified position was different than the one offered in the letter and would require Claimant to lift between 20 and 80 pounds. (Id. ¶ 12h.) Although Dr. Lipton indicated that Claimant could "possibly" perform sedentary work, he described that as being seated work with no lifting, bending, or squatting. (R.R. at 20.) Owner testified the glazing work would require Claimant to lift three pounds, stay on his feet, and work on scaffolding, and Claimant testified this position would require him to climb ladders. (Hr'g Tr., July 9, 2015, at 42, 58.) Claimant credibly testified that he could not perform the positions offered by Employer because "'[he] was still hurting,'" he "couldn't carry something heavy" and "did not believe that he could physically glaze windows." (FOF ¶ 4c.) Based on that testimony, the WCJ found that Claimant could not perform the jobs offered and, therefore, Employer was not entitled to a suspension of Claimant's benefits.

Finally, Employer argues that it was an abuse of discretion to award a penalty based on the WCJ's finding that "Employer violated the Act by failing to

procure workers['] compensation insurance." (Employer's Br. at 15.)  However, the WCJ did not grant the Penalty Petition on this basis but found that Employer violated the Act by not filing any Bureau documents as required by Section 406.1 of the Act, 77 P.S. § 717.1.[11]  (FOF ¶ 24.)

Section 435(d)(i) of the Act authorizes the imposition of a penalty on employers or insurers not to exceed 10 per centum of the amount awarded and accrued interest payable "for violations of the provisions of this [A]ct or such rules

_____

[11] Section 406.1(a), (c), (d)(1), (2) states, in relevant part:

> (a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer. . . . .
>
> . . . .
> (c) If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the department, stating the grounds upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department.
>
> (d)(1) In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department.
>
> (2) The notice of temporary compensation payable shall be sent to the claimant and a copy filed with the department and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the notice of temporary compensation payable. . . . .

77 P.S. § 717.1(a), (c), (d)(1), (2).

11

and regulations or rules of procedure."[12] 77 P.S. § 991(d)(i). "When a violation of the Act occurs, the assessment of penalties, as well as the amount of penalties, is within the discretion of the WCJ." City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock), 934 A.2d 156, 160-61 (Pa. Cmwlth. 2007). This Court will not overturn a WCJ's penalty assessment unless it was an abuse of discretion, which "is not merely an error of judgment but occurs when the law is misapplied in reaching a conclusion." Id. at 161.

An employer violates Section 406.1 if it does not issue, within 21-days' notice of a work injury, a Notice of Compensation Payable, a Notice of Compensation Denial, or a Notice of Temporary Compensation Payable. Coyne, 942 A.2d at 951. An employer who does not issue such documents can be liable for penalties for not complying with Section 406.1 of the Act. Id. Here, it is undisputed that Employer did not file any of these Bureau documents for Claimant's work-related injuries, of which it was aware, and, therefore, it violated the Act. (FOF ¶ 2; Hr'g Tr., Aug. 25, 2014, at 5.) Thus, we discern no abuse of discretion in the WCJ imposing a 10 percent penalty.

---

[12] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 991(d)(i). Section 435(d)(i) provides, in pertinent part:

> (d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure: . . . (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable . . . .

Id.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Davidson Construction,        :
             Petitioner    :
       :
        v.           :    No. 1414 C.D. 2016
       :
Workers' Compensation Appeal    :
Board (Butcher, Uninsured    :
Employers Guaranty Fund/ACS    :
Claims Service and State Workers'    :
Insurance Fund),    :
          Respondents    :

# O R D E R

**NOW**, April 6, 2017, the order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge