Annette HINTON, Petitioner,

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (City of Phila-
delphia), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 31, 2001.
Decided Nov. 15, 2001.

Michael McDermott, Philadelphia, for petitioner.

Lawrence Doherty, Philadelphia, for respondent.

Before: DOYLE, President Judge, McGINLEY, Judge, McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Annette Hinton (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming an order of the Workers' Compensation Judge (WCJ), dismissing her reinstatement petition. We now affirm.

The City of Philadelphia (Employer) employed Claimant as a correctional officer for approximately eight years. In the course and scope of her employment on July 4, 1990, Claimant sustained an injury to her right knee when one of her fellow officers tripped while attempting to separate inmates and fell upon that knee. Claimant received total disability benefits pursuant to a notice of compensation payable issued by Employer. Claimant underwent physical therapy for approximately three weeks and, ultimately, underwent arthroscopic surgery on this knee.

Claimant eventually returned to work in March of 1991, at which time her benefits were suspended. Nevertheless, on April 16, 1992, Claimant re-injured her right knee in a fall while restraining an inmate. Claimant was unable to work and she received both injured on duty (IOD) pay and sick pay during this time. Again, she underwent physical therapy as well as a second arthroscopic surgery in August of 1994. Following this surgery, Claimant worked on and off with Employer doing mainly administrative work. Claimant received either IOD pay or sick pay during this period.[1]

On November 30, 1994, Claimant filed her reinstatement petition, alleging that she was entitled to partial disability benefits from the time she returned to work in March of 1991 through to the present. Claimant further alleged that, following her surgery in August of 1994, she was unable to continue working.[2] Employer filed an answer denying the allegations of Claimant's petition. The case was then assigned to the WCJ and proceeded with hearings.

At these hearings, Claimant presented her own deposition testimony, detailing a history of her work injury and her subsequent and ongoing complaints of pain. In her testimony, Claimant also indicated that she missed approximately forty-six days from February 28, 1996, to February 17, 1997, three days before her deposition, as a result of her original work injury. On cross-examination, Claimant indicated that as of February 20, 1997, the date of her deposition, she had returned to full-duty employment with Employer. Claimant also indicated that not all of the approximately forty-six days missed were related to problems with her knee.

In further support of her petition, Claimant presented the deposition testimony of Dr. Nicholas P. Diamond. Dr. Diamond practices osteopathic medicine and is Board-certified in pain management. Dr. Diamond first examined Claimant on September 6, 1996, more than six years after her original work injury. At that time, Dr. Diamond took a history from Claimant

---

1. The record is unclear as to what type of payments Claimant may have received during this time period. Nevertheless, the record is clear that Claimant never requested nor received any workers' compensation benefits during this period.

2. Nevertheless, in either December of 1995 or January of 1996 (again the record is unclear) Claimant returned to her pre-injury job as a correctional officer and continued working at this job through February 20, 1997, the date of her deposition in this case.

regarding her work injury and performed a physical examination. Dr. Diamond diagnosed Claimant as suffering from "[p]ost-traumatic right knee internal derangement status post right knee arthroscopic surgery times two; chronic right knee tenosynovitis and chronic pain syndrome." (R.R. at 64a).

Dr. Diamond indicated that he saw Claimant on ten occasions from September 6, 1996, to February 7, 1997. During that time, Dr. Diamond had prescribed physical therapy for Claimant. Claimant completed twenty-five therapy treatments, at which point the therapy group determined that she had reached a plateau. Dr. Diamond thereafter referred Claimant to the Philadelphia Orthopedic Group. Dr. Diamond opined that Claimant's condition was permanent, that her condition will cause her pain in the future, that she will need continuing medical assistance and that she was unable to continue working for Employer. Dr. Diamond further opined that Claimant's condition was related to her original work injury on July 4, 1990, and exacerbated by the re-injury on April 16, 1992.

On cross-examination, Dr. Diamond acknowledged that his opinion on causality was based entirely upon the history provided to him by Claimant. Dr. Diamond also acknowledged that neither his notes nor his records make any reference to a point where he advised Claimant not to return to work for Employer. Dr. Diamond also indicated that he only advised Claimant to remain off work on two occasions, from September 21, 1996, through September 23, 1996, and from January 4, 1997, through January 5, 1997.[3] Employer did not present any evidence before the WCJ.

Ultimately, the WCJ issued a decision and order dismissing Claimant's reinstatement petition. In rendering his decision, the WCJ rejected the testimony of Dr. Diamond as neither credible nor persuasive. Regarding Claimant's testimony, the WCJ found that such testimony failed to establish that Claimant sustained a recurrence of her original work injury, failed to establish the dates that she called out sick that were related to her knee injury[4] and failed to establish a loss of earnings as a result of calling out sick. Hence, the WCJ concluded that Claimant had failed to meet her burden of proving that she is entitled to a reinstatement of benefits. Claimant appealed to the Board and the Board affirmed.

On appeal to this Court,[5] Claimant argues that the Board erred in affirming the

3. When asked on cross-examination if his opinion would change if he were told that Claimant had continued to work through June 30, 1997, the date of his deposition, Dr. Diamond responded "[n]o, it wouldn't change because she was trying to remain employed the whole time. ...." (R.R. at 82a).

4. The WCJ noted that Claimant was unsure as to which dates in the period from February 28, 1996, to February 17, 1997, she was out sick due to her knee condition. The WCJ further noted that Claimant admitted that some of these sick days were unrelated to her knee condition.

5. In cases such as this, where the burdened party (Claimant) is the only party to present evidence and does not prevail before the factfinder, our scope of review is limited to determining whether the factfinder erred as a matter of law or capriciously disregarded competent evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988). A capricious disregard of evidence will be found when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Iacono v. Workmen's Compensation Appeal Board (Chester Housing)*, 155 Pa.Cmwlth.234, 624 A.2d 814 (1993), *affirmed*, 536 Pa. 535, 640 A.2d 408 (1994).

decision of the WCJ, as the WCJ capriciously disregarded competent, unequivocal evidence establishing that her present disability was causally related to her original work injury. We disagree.

■ Section 413(a) of the Pennsylvania Workers' Compensation Act (Act)[6] addresses reinstatement petitions and provides as follows:

> A workers' compensation judge . . . .may, at any time, modify, reinstate, suspend or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. § 772. Further, the burden rests on a claimant seeking a reinstatement of benefits following a suspension. *See Signorini v. Workmen's Compensation Appeal Board (United Parcel Service)*, 664 A.2d 672 (Pa.Cmwlth.1995).

■ More specifically, a claimant seeking reinstatement following a suspension of benefits must prove that: (1) through no fault of his or her own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990). The testimony of a claimant, alone, satisfies his or her burden of establishing that the work-relat-

ed injury continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994).

■ Once a claimant testifies that his or her prior work-related injury continues, the burden then shifts to employer to prove the contrary. *Id.* "Where an employer fails to present evidence to the contrary, the claimant's testimony, if believed by the [WCJ], is sufficient to support reinstatement of the suspended benefits." *Latta*, 537 Pa. at 227, 642 A.2d at 1085. Moreover, a claimant does not have to reestablish the causal relationship, i.e., job relatedness, of the injury.[7] *Van Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Company)*, 683 A.2d 342 (Pa.Cmwlth.1996). Nevertheless, the burden does remain with claimant to affirmatively establish that it is the work-related injury which is causing his or her present disability. *Id.; see also Sacred Heart Hospital v. Workers' Compensation Appeal Board (Mutis)*, 703 A.2d 577 (Pa. Cmwlth.1997).

■ In order to meet her burden in this case, Claimant testified on her own behalf. Claimant testified as to approximately forty-six days between February 28, 1996, to February 17, 1997, that she allegedly missed work as a result of her original work injury. However, Claimant admitted on cross-examination that not all of these days were missed because of problems with her knee, i.e., her original work-related injury, but that some were missed as a result of non-work-related problems.[8] *See* R.R. at 41a–42a. Claimant was unable to specifically identify which days were

---

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

7. In other words, a claimant is entitled to a presumption that his or her work-related injury still persists.

8. Claimant also indicated on cross-examination that she utilized her sick time to compensate herself for these missed days.

missed because of her knee problem. Furthermore, as of February 20, 1997, the date of her deposition, Claimant indicated that she was working full duty for Employer. *See* R.R. at 41a.

Claimant also presented the testimony of Dr. Diamond in support of her reinstatement petition. Dr. Diamond, however, was only able to testify as to two certain periods during the time that he treated Claimant in which he excused Claimant from working, November 21, 1996, through November 23, 1996, and January 4, 1997, through January 5, 1997.[9] Dr. Diamond acknowledged on cross-examination that his opinion on causality was based entirely upon the history provided to him by Claimant. Further, despite the fact that Claimant had returned to work in December of 1995 or January of 1996 and had continued working, Dr. Diamond opined that Claimant's condition was permanent, that her condition will cause her pain in the future, that she will need continuing medical assistance and that she was unable to continue working for Employer. Nonetheless, the WCJ rejected Dr. Diamond's testimony as neither credible nor persuasive.[10]

Based upon our review of the evidence of record, we cannot say that the WCJ capriciously disregarded competent, unequivocal evidence establishing that Claimant's present disability was causally related to her original work injury. Nor can we say that the Board erred in affirming the decision of the WCJ.

**9.** As noted above, Dr. Diamond only saw Claimant on ten occasions from September 6, 1996, to February 7, 1997.

**10.** The law is well settled that the WCJ is the ultimate finder of fact and has exclusive province over questions of credibility and evidentiary weight. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board and Krawczynski*, 9 Pa.Cmwlth. 176, 305 A.2d

Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 15th day of November, 2001, the order of the Workers' Compensation Appeal Board is hereby affirmed.

757 (1973). In making such determinations, the WCJ is at liberty to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Carr v. Workmen's Compensation Appeal Board (May Department Store)*, 671 A.2d 780 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 544 Pa. 662, 676 A.2d 1202 (1996).