Virna WOOD, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (COUNTRY CARE PRIVATE NURSING), Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2006.

Filed Jan. 10, 2007.

Daniel K. Bricmont, Pittsburgh, for petitioner.

Warren D. Ferry, Butler, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Virna Wood (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed a WCJ's adjudication granting her Reinstatement Petition, but denied Claimant an award of attorney's fees. The sole issue before us is whether the Board erred in affirming the WCJ's determination that Country Care Private Nursing (Employer) reasonably contested Claimant's Reinstatement Petition.

Claimant worked for Employer as a home health aide, which required her, among other things, to travel to patients' homes where she would bathe, dress, lift, and generally assist patients in their daily activities. (WCJ 7/27/04 Finding of Fact (FOF) ¶ 6.) On June 29, 1998, Claimant sustained a "lower back strain" in the scope and course of her employment when transferring a patient to-and-from a commode. Claimant first received benefits for the "lower back strain" by Notice of Compensation Payable (NCP) dated August 21, 1998. (WCJ 7/27/04 FOF ¶ 8.) Claimant and Employer then entered into a Supplemental Agreement for Compensation for Disability or Permanent Injury on November 19, 1998, whereby the parties agreed that Claimant had returned to work on August 18, 1998, which caused the suspension of her benefits. Those benefits were reinstated on October 12, 1998 due to a recurrence of her injury.

Claimant did not, again, return to work for Employer, but she did begin to work in March of 2000 as a part-time cashier for Mary's Lunch and Grocery. (WCJ 7/27/04 FOF ¶ 10.) Employer, thereafter, filed a Petition to Terminate, alleging that Claimant had fully recovered from her work injury and was able to return to work without restrictions. (WCJ 6/13/01 FOF ¶ 1.) In the 2001 adjudication on the Petition to Terminate, the WCJ found that, while the NCP described the injury as a lower back strain, "an MRI performed on March 2, 1999, revealed a moderately sized herniated disc at L5–S1 ... [and a l]umbar myelogram and post myelogram CT scan performed in September, 1999, also, revealed a large herniated [disc] at L5–S1." (WCJ 6/13/01 FOF ¶ 8.) On September 26, 1999, Claimant underwent her initial lumbar disc surgery, where Dr. John Bookwalter performed a L5–S1 discectomy. (WCJ 6/13/01 FOF ¶ 8.)

Ultimately, the WCJ found Claimant's medical expert, Julia Mathos, D.O., credible, diagnosing Claimant as suffering from a herniated disc and chronic lumbar strain, which Dr. Mathos attributed to Claimant's June 29, 1998 injury. (WCJ 6/13/01 FOF ¶ 12.)[1] However, the WCJ found Employer's medical expert not credible, who testified that Claimant had fully recovered from her June 29, 1998 injury. (WCJ 6/13/01 FOF ¶ 13.) Accordingly, the WCJ denied the Petition to Terminate, but modified Claimant's benefits to reflect her return to work at reduced wages.

Claimant discontinued working for Mary's Lunch and Grocery in April or May of 2002 because of a hiatal hernia. (WCJ 7/27/04 FOF ¶ 10.) Claimant then obtained employment as a telemarketer with Xentel, beginning on February 27, 2003, but was discharged on April 28, 2003 for

---

1. In FOF ¶ 12, the WCJ, in an apparent typo, has Claimant's injury date as June 28, 1998.

unsatisfactory job performance. (WCJ 7/27/04 FOF ¶ 11.) Employer filed a Notification of Modification on June 23, 2003 to recalculate Claimant's Partial Compensation Rate to reflect her increased earnings with Xentel. (WCJ 7/27/04 FOF ¶ 13.)

Claimant filed a Reinstatement Petition, which prompted this current litigation, on July 21, 2003, alleging that, as of June 26, 2003, she was again totally disabled because of her June 29, 1998 work-related injury. Claimant sought total disability benefits and ongoing medical treatment.

Before the WCJ, Claimant produced, in addition to her own testimony, the deposition testimony of her family physician, Dr. Mathos, and the medical records and report of her surgeon, Dr. Ward. Employer introduced no evidence. Employer did lodge and preserve an objection, later overruled by the WCJ (Def.Ex."A"), to the submission of Dr. Mathos's deposition testimony, arguing that Dr. Mathos was not qualified to render an opinion on causation because she did not perform Claimant's surgeries.

The WCJ found credible the deposition testimony of Dr. Mathos, which provided that Claimant had increased back pain beginning in April of 2003, and that her pain did not respond to medication. (WCJ 7/27/04 FOF ¶ 14.) Dr. Mathos opined, over objection, that the surgeries performed by Dr. Ward were related to Claimant's original injury because "[i]t's at the same area and there was no other injuries reported." (Mathos Dep., 1/13/04 at 30.) Dr. Mathos, however, also testified that her examination of Claimant's x-ray from April 2003 revealed "[t]he dorsal spine showed arthritis. Her lumbar spine actually showed the disc disease at L5–S1." (Mathos Dep., 1/13/04 at 32–33.)

Dr. Mathos was not Claimant's treating surgeon. Rather, after unsuccessfully treating Claimant with muscle relaxants, anti-inflammatory medications, and a unit designed to minimize spasms, a nurse practitioner from Dr. Mathos' office gave Claimant the option of consulting a pain clinic for chronic back pain or consulting a group of orthopedic surgeons; Claimant chose to consult an orthopedic surgeon. (Mathos Dep., 1/13/04 at 24.) Claimant underwent back surgery in September 2003, which Dr. Mathos characterized as "[f]usion at her L5–S1 interspace." (WCJ 7/27/04 FOF ¶ 15; Mathos Dep., 1/13/2004 at 25.) Dr. Ward performed the surgical procedures on September 17 and 18, 2003.[2] Dr. Mathos, however, testified that the surgeries performed by Dr. Ward were *not* for the repair of the disc herniation, and Dr. Mathos could *not* opine whether Dr. Ward's surgeries were for the repair of either Claimant's degenerative disc dis-

---

2. The WCJ found, based on the medical records concerning Claimant's September 17, 2003 surgery, that Dr. Ward performed a "posterior lumbar interbody fusion of L5–S1 with bone graft, and a posteriorlateral instrumental fusion of L5–S1 with autogenous iliac crest graft and polyaxel CD fixation." (WCJ 7/27/04 FOF ¶ 15.) Based on the medical records produced by Dr. Ward, the WCJ found that Claimant's "disc space was very collapsed at L5–S1 and the presence of scar tissue on the right side [made] it … necessary to put traction on the nerve roots to accomplish the grafts." *Id.* The WCJ's finding of fact number 16 further provides:

[Claimant], based on the credible [medical] records from the September 17, 2003, admission, had bilateral leg pain with decreased peroneus longus and brevis function bilaterally after the September 17, 2003, surgery. A postoperative CT scan revealed that sacral screws could be impinging on the L5 or S–1 nerve roots. Dr. Ward, on September 18, 2003, removed the sacral screws and repositioned the S–1 pedicle screws bilaterally.…
(WCJ 7/27/04 FOF ¶ 16.)

ease or the narrowing of her foramen.[3] (Mathos Dep., 1/13/2004 at 40–41.)

In her adjudication regarding the Reinstatement Petition, the WCJ concluded that Claimant established that total disability due to the June 29, 1998 work injury had recurred on April 28, 2003. (WCJ 7/27/04 Conclusion of Law (COL) ¶ 2.)[4] The WCJ's finding that Claimant was totally disabled since June 26, 2003, due to her June 29, 1998 work-related injury, was based on the credible testimony of Dr. Mathos. (WCJ 7/27/04 FOF ¶ 14.) Moreover, the WCJ found, "based on the credible testimony of Dr. Mathos and the claimant and the credible [medical] records, that the claimant's September 2003 surgeries as well as her problems following these September 2003 surgeries [were] related to the claimant's June 29, 1998, work injury...." (WCJ 7/27/04 FOF ¶ 18.)

After finding that Claimant's total disability, due to the June 29, 1998 injury, recurred on April 28, 2003 (WCJ 7/27/04 FOF ¶ 17), the WCJ denied Claimant's request for attorney's fees because:

> based on the record taken as a whole, [Employer] had a reasonable basis for [the] contest. An issue existed as to

whether the claimant's September 2003 surgeries were related to the claimant's work injury since the claimant did not produce the testimony of her treating surgeon.

(WCJ 7/27/04 FOF ¶ 21.) Based on this finding of Employer's reasonable contest, the WCJ concluded that Claimant was liable for her own attorney's fees. (WCJ 7/27/04 COL ¶ 6.)

Claimant appealed the WCJ's denial of reasonable attorney's fees to the Board, which subsequently affirmed the WCJ's determination that Employer's contest was reasonable. Claimant then filed the instant Petition for Review with this Court.[5]

Before this Court, Claimant raises one issue: whether the Board committed an error of law in affirming the WCJ's determination that Employer engaged in a reasonable contest when it challenged Claimant's Reinstatement Petition, but did not produce its own evidence.

A claimant seeking a reinstatement of benefits must prove that: (1) through no fault of her own, the claimant's earning power is once again adversely affected by the work-related injury; and (2) the disability which gave rise to the origi-

3. Following the surgery, Claimant testified that her current complaints evolved from complications from the surgeries and were limited to her "waist down." (Claimant Test., 3/15/04 at 14–16.)

4. Relying on *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 34, 584 A.2d 301, 305 (1990), Claimant argues that, to reinstate her total disability benefits, she had to establish that, through no fault of her own, her earning power is once again adversely affected by her disability, and that the disability which gave rise to her original claim, in fact, continues.

However, because Claimant never completely stopped receiving workers' compensation benefits and was only seeking an increase

of her benefits to full disability, she, arguably, could have filed a Petition to Modify. Nevertheless, we note our Supreme Court's recent pronouncement that the form of the petition is not controlling when a claimant is entitled to relief. *See Westinghouse Elec. Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 428–30, 883 A.2d 579, 590–91 (2005).

5. "Our standard of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence." *Bailey v. Workers' Compensation Appeal Board (U.S. Airways)*, 865 A.2d 319, 322 n. 2 (Pa.Cmwlth. 2005), *pet. for allowance of appeal denied*, 584 Pa. 702, 882 A.2d 1006 (2005).

nal claim does, in fact, continue. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990); *Hinton v. Workers' Compensation Appeal Board (City of Philadelphia),* 787 A.2d 453 (Pa. Cmwlth.2001). Once a claimant testifies that her work-related injury continues, the burden shifts to the employer to show the contrary, and when an employer fails to do so, the claimant's testimony is sufficient to support a reinstatement of suspended benefits, if credited by the WCJ. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.),* 537 Pa. 223, 642 A.2d 1083 (1994).

To meet her burden, Claimant relied, in large part, on the deposition testimony of her family physician and her family physician's interpretation of medical records from her September 2003 surgeries. Claimant also presented her own testimony. Over the Employer's objection to the testimony of her treating physician, the WCJ found Claimant's testimony and Dr. Mathos's testimony credible, satisfying her burden. The burden then shifted to Employer, yet Employer presented no evidence in support of its burden; instead, it relied solely on its objection and cross-examination of Claimant's witnesses.

▮▮▮▮ The purpose behind awarding attorney's fees under Section 440 of the Workers' Compensation Act (Act)[6] is "to ensure that successful claimants receive compensation benefits that are undiminished by the costs of litigation," as well as "to discourage unreasonable contests of workers' claims." *Wertz v. Workmen's Compensation Appeal Board (Department of Corrections),* 683 A.2d 1287, 1293 (Pa. Cmwlth.1996). "[A] prevailing claimant is entitled to attorney's fees unless the record supports a conclusion that the employer had a reasonable basis for contesting

liability." *Id.; see* Section 440 of the Act, 77 P.S. § 996; *Boyer v. Workers' Compensation Appeal Board (First Capital Insulation, Inc.),* 740 A.2d 294, 296 (Pa. Cmwlth.1999) (finding that "[a]n award of counsel fees is the rule and excluding counsel fees is the exception, to be applied only where the employer meets its burden of presenting sufficient evidence to establish that its contest was reasonable.") (citations omitted). Whether or not there has been a reasonable basis for contesting a claimant's award of benefits depends upon both the facts and the legal issues involved in each case. *Poli v. Workmen's Compensation Appeal Board,* 34 Pa.Cmwlth. 630, 384 A.2d 596 (1978). A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest was frivolous or intended to harass a claimant. *Orenich v. Workers' Compensation Appeal Board (Geisinger Wyoming Valley Medical Center),* 863 A.2d 165, 171 (Pa.Cmwlth.2004). Whether an employer's contest is reasonable is a question of law fully reviewable by this Court. *United States Steel Corp. v. Workers' Compensation Appeal Board (Luczki),* 887 A.2d 817, 821 (Pa.Cmwlth. 2005).

Claimant argues that Employer's contest was unreasonable because it never presented its own evidence but, instead, relied upon the cross-examination of Claimant's medical expert to refute Claimant's allegations. Claimant asserts that, because Employer offered no contradictory evidence and could point to no evidence of any other cause of Claimant's injury, Employer did not make a reasonable contest, and Claimant should have been awarded reasonable attorney's fees for an unreasonable contest. Claimant argues that the WCJ based her denial of Claim-

**6.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996.

ant's request for reasonable attorney's fees on Claimant's failure to produce her treating surgeon, and this basis for denial was an error of law because it suggests that Claimant had the burden to establish an unreasonable contest, which she did not.

In contrast, Employer argues that it made a reasonable contest because it believed the WCJ would not find Claimant's family physician qualified to render an opinion on the complex medical questions regarding the surgeries performed in September 2003 by Dr. Ward. Employer also asserts that, "[g]iven the passage of time from the original injury (1998)[,] the original surgery (1999) and the claim for reinstatement in 2003, it was reasonable for the Employer to contest the causal relationship of [Claimant's] disability in 2003 and her second surgery in 2003." (Employer Br. at 5.)

 We agree with Claimant. While the burden was on Claimant in her Reinstatement Petition to prove her work-related disability continued, a burden the WCJ concluded she met, the burden to prove a reasonable contest is on Employer. Employer's burden required it to establish that a conflict in the evidence existed or that contrary inferences could be drawn from the evidence. *Orenich.* In this case, such evidence could have shown that Claimant's earning power was not adversely impacted by her disability, or that the disability that gave rise to the original claim had ceased. Employer did not establish any conflicting evidence, and offered no testimony or evidence from which contrary inferences could be drawn.

 Employer's entire argument hinges on Claimant calling her *treating physician* to testify as to treatment rendered by her *treating surgeon.* Employer's argument implies that a negative inference should have been made against Claimant because she did not present the

treating surgeon. We agree with Claimant that making such an inference here is improper. No case law or statute required Claimant to produce testimony of her treating surgeon to meet her burden in the reinstatement proceeding. An expert, such as the treating physician, may base an opinion on facts of which he or she has no personal knowledge if they are supported by evidence of record. *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Herder)*, 765 A.2d 414 (Pa.Cmwlth. 2000). This is precisely what the treating physician did. In general, a physician is competent to testify in specialized areas of medicine, even though the physician is neither a specialist, nor certified in those fields. *Marriott Corp. v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 630 (Pa.Cmwlth.2003). Furthermore, the "missing witness" rule, permitting adverse inference, is applicable only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. *Id.* at 631. Nothing in this case suggests that Dr. Ward was peculiarly within the reach or knowledge of Claimant. The parties had deposed Dr. Mathos in January of 2004, and Employer had access to Claimant's medical records, several months prior to the deposition, regarding the surgeries performed by Dr. Ward and their causal relationship to the work injury. Employer could have deposed Dr. Ward and presented that testimony before the WCJ—it chose not to do either. In not doing so, and not presenting *any* evidence, Employer failed to meet its burden.

 Considering the purpose of Section 440 of the Act, the presumption that Claimant is entitled to legal fees, *Wertz*, 683 A.2d at 1293, and Employer's failure to present any evidence either contrary to Claimant's medical evidence or from which a contrary inference could be drawn (other

than one relating to the treating physician not being the operating physician, *Orenich*, 863 A.2d at 171), the Board erred in holding that Employer's contest was reasonable based on the particular facts and circumstances of this case. *Poli*, 384 A.2d at 598.

Accordingly, based on the foregoing opinion, we reverse the order of the Board and remand for the calculation of legal fees.

### *ORDER*

**NOW,** January 10, 2007, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **REVERSED,** and the case is **REMANDED** to the Board with directions that it remand to the Workers' Compensation Judge for calculation of legal fees.

Jurisdiction relinquished.