IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Verizon Pennsylvania, LLC, :
     Petitioner :
         : No. 1153 C.D. 2019
    v.    :
         : Submitted: January 10, 2020
Workers' Compensation Appeal :
Board (Murray),    :
     Respondent :

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH       FILED: May 11, 2020

    Verizon Pennsylvania, LLC (Employer), petitions for review of the August 1, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the review and reinstatement petitions filed by Brian D. Murray (Claimant). We affirm.

**Background**

    The relevant factual and procedural history of this case are as follows. On June 22, 2015, Claimant sustained a work-related injury in the course and scope of his employment as a service technician with Employer. In a notice of compensation payable (NCP), Employer accepted liability for Claimant's injury, which was described

as a low back strain. On June 30, 2016, Claimant returned to full-duty work as a service technician until October 2, 2016, at which point he began working for Employer as a Lineman/Outside Plant Technician (OPT position). Subsequently, Employer filed a notification of suspension of benefits, based upon the fact that Claimant had returned to full-duty work at his pre-injury job as a service technician, and Claimant filed a petition challenging the suspension. The parties, in turn, entered into a supplemental agreement and, thereafter, the dispute was limited to resolution of the review and reinstatement petitions that Claimant filed in the interim of these events. (WCJ's Findings of Fact (F.F.) at Nos. 1-2, 4-5, 8.)

More specifically, on October 18, 2016, Claimant filed a review petition requesting that the WCJ amend the NCP to include a left knee injury that Claimant allegedly developed as a result of the original work-related injury. On November 23, 2016, Claimant filed a reinstatement petition requesting an award of partial disability benefits to account for the loss of wages that he sustained due to his transfer/move from a service technician to the OPT position. (F.F. at Nos. 6-8.)

In support of his petitions, Claimant testified at a hearing held on January 9, 2017. Claimant stated that at the time of his work-related injury on June 22, 2015, he was employed as a service technician. Claimant testified that, following his injury, Dr. Eric Nabors, M.D., performed surgery on his lower back on June 25, 2015, implanted a spinal cord stimulator, and prescribed a right ankle brace called an Ankle Foot Othosis (AFO). Claimant testified that he undergoes chiropractic treatment, including electric adjustment, and massage therapy for his lower back and legs. (F.F. at No. 10a, c, i, l.)

Claimant further stated that he began having issues with his left knee approximately three months after the surgery, and that he receives injections to provide

2

him with pain relief. Claimant testified that, prior to the work-related injury, he never had any problem with (or obtained treatment for) his left knee. According to Claimant, he walked with a cane for a few months following his surgery and, during that time, he used his left leg more often, placing greater weight on it to prevent further injury to his right leg and back. Claimant said that he was later prescribed and used the AFO brace on his right ankle, but added that he still placed extra weight onto his left side when he walked. (F.F. at No. 10a, d, h, l.)

Claimant further explained that he returned to full-duty work as a service technician from June 30, 2016, to October 2, 2016, with medical restrictions. During this time, he went through Employer's application process for an OPT position, and began working as an OPT on October 2, 2016. Claimant stated that, despite the continuing pain in his left knee, he was able to perform the duties required of this position. (F.F. at No. 10d, e.) Regarding Claimant's testimony about the OPT position and the circumstances surrounding his hire, the WCJ summarized it as follows:

> f.      [T]he service technician job is far more physically demanding than the [OPT] position. As a service technician, [Claimant] would be constantly moving his entire shift, going up and down stairs in customers' homes, contorting behind TVs, bending underneath computers, running wires into ceilings, and working overhead. In contrast, as a[n] [OPT], he works on a crew of four[.] [A]lthough it is also a very physically heavy job, the crew shares responsibility. [Claimant] still has to haul equipment, be on his feet all day, and [he] work[s] in an outside environment.
>
> g.      [T]he [OPT position] . . . "actually [] came about as a workplace accommodation to get me[, i.e., Claimant,] back to work." [Claimant] said he has pain while working as an [OPT], but he is able to do [the job].

*       *       *

3

j.      On cross-examination, Claimant agreed that he applied for the [OPT] position through [Employer's] regular application process. Claimant stated that he had numerous conversations with workplace accommodations to assist him in finding a different job within [Employer] that he was able to do. He stated that in order to apply for the job as a[n] [OPT], he had to have his restrictions removed, so he requested that [Dr. Nabors] remove[] all work restrictions from him.

(F.F. at No. 10f, g, j.)

In addition, Claimant introduced the deposition testimony of Dr. Nabors, dated June 14, 2017. In his testimony, Dr. Nabors explained that he began to treat Claimant when Claimant was admitted to St. Clair Hospital following the June 22, 2015 work-related injury; that he diagnosed Claimant with a recurrent herniated disc in his lumbar spine with a foot drop; and that he and performed surgery to remove the herniated disc on June 25, 2015. Dr. Nabors stated that he provided Claimant with the AFO brace in order to hold and stabilize Claimant's right foot and added that, without the brace, Claimant's foot would "flop down." Dr. Nabors also implanted a permanent spinal cord stimulator in Claimant's back area in order to improve pain in the back and/or leg and remarked that the device resulted in Claimant experiencing a significant decrease in pain. (F.F. at No. 11a, c.)

With respect to the medical condition that Claimant developed in his left knee after he underwent back surgery, the WCJ summarized Dr. Nabors' testimony, in relevant part, as follows:

f.   . . . . Claimant began complaining to him[, *i.e.*, Dr. Nabors,] of pain in his left knee, which Claimant believed was the result of using his left leg to compensate for the significant right leg weakness. Claimant advised Dr. Nabors that the left knee pain increased with activity, especially squatting, going up and down stairs[,] and getting in and out of low chairs. Dr. Nabors injected Claimant's knee and

4

obtained an MRI, which did not reveal any pathology necessitating surgery. Dr. Nabors performed a physical exam of the left knee, which revealed mild swelling and tenderness in the anterior and medial [areas of the] knee.

g. Dr. Nabors opined that Claimant had an overuse[-]related condition in his left knee related to compensation for weakness in his right leg. Dr. Nabors based his opinion on the fact that Claimant had demonstrative weakness in his right leg, requiring compensation by his left leg, and increasing the stress on his left knee. He recommended that Claimant undergo physical therapy for this condition with the goal of decreasing inflammation and increasing range of motion and strength.

(F.F. at No. 11f-g.)

Concerning Dr. Nabors' decision to release Claimant of medical restrictions so that he could accept the OPT position, the WCJ summarized the pertinent testimony as follows:

d. Dr. Nabors testified that he discussed with Claimant his time[-]of[-]injury position as well as other positions that may have been available with Employer. It was his understanding that [OPT] job would be less physically demanding than Claimant's time[-]of[-]injury job as a service technician. Part of the reason is that Claimant would be working with a team as an OPT, so there would be others available to help him, as opposed to working on his own as a service technician.

e. Dr. Nabors explained that he released Claimant to perform the full[-]duty, unrestricted position as an OPT, based partially on his exam of Claimant and partially on his discussion with Claimant. Dr. Nabors explained that Claimant had reached maximum medical improvement and wanted to work. Dr. Nabors did not believe [Claimant] could perform [] full duty as a service technician for an extended period of time, but did release him to perform the full[-]duty OPT position.

(F.F. at No. 11d-e.)

5

Discussing his doctor-patient relationship with Claimant, Dr. Nabors testified that he "continued to provide post-operative care to Claimant, including frequent re-evaluation of the right leg, as well as pain in the back and leg, and subsequently left knee pain." (F.F. at No. 11b.) In particular, "Dr. Nabors continued to treat Claimant until he switched practice groups to Mountain State Orthopedics in West Virginia," and his "last record" pertaining to Claimant "was from February 3, 2016." *Id.*

In summarizing the two prevalent issues that Employer explored when conducting cross-examination of Dr. Nabors, the WCJ described the exchanges as follows:

> h. . . . . Dr. Nabors was questioned about his report dated March 29, 2016, stating that Claimant was disabled from gainful employment, when on April 13, 2016, he provided work restrictions of lifting up to 50 pounds, occasional climbing, and ability to change position frequently. He testified that the change came as a result of discussions with Claimant, who advised him that he felt capable of trying to perform work at that level.
>
> i. When asked whether, based on a functional capacity evaluation, Dr. Nabors felt that Claimant was capable of performing either the service technician position or the OPT position, Dr. Nabors stated that Claimant could do either job for short periods of time, but doing it repeatedly for eight hours per day, five days per week, he would be more likely to reinjure himself in the service technician position.

(F.F. No. at 11h-i.)

In rebuttal, Employer submitted the deposition testimony of Michael Seel, M.D. In sum, based upon an examination of Claimant and review of Claimant's medical records, Dr. Seel opined that "Claimant's left knee complaints were not work-related" because "there were no documented left knee complaints for some time

following the injury" and "no objective findings on exam or radiographs to substantiate Claimant's complaints." (F.F. at No. 12e.) Dr. Seel testified that he "did not see evidence of an overuse injury, or any injury, to the left knee." *Id.* According to Dr. Seel, "Claimant would be capable of performing his regular duty position [as a service technician] without restriction." (F.F. at No. 12f.) Dr. Seel based this determination on the fact that, following the original work-related injury, Claimant had returned and performed the service technician job for three months. *Id.*

Employer further introduced, without objection, an affidavit from one of its employees, Elaine Constable, which stated that "Claimant's transfer [to] the OPT position was based on Claimant's application through [Employer], and not the result of any accommodation." (F.F. at No. 13.)

Reviewing the evidence submitted of record, the WCJ found the testimony of Claimant and Dr. Nabors to be credible and accepted it over any evidence that Employer submitted. (F.F. at Nos. 14-16.) The WCJ found that Claimant met his burden of proof on the review petition and amended the NCP to include a left knee injury. (F.F. at No. 17; WCJ's Conclusions of Law (C.O.L.) at No. 2.) The WCJ further found that Claimant met his burden of proof on the reinstatement petition, determining that Claimant suffered a wage loss when he accepted the OPT position and, consequently, was entitled to partial disability benefits from the date he started the OPT position and going forward. (F.F. at No. 18; C.O.L. at No. 3.)

Employer appealed to the Board, which affirmed the WCJ's order.

7

## Discussion

Before this Court,[1, 2] Employer argues that the WCJ erred in granting Claimant's review and reinstatement petition. Employer contends that "[a] reasonable, unbiased mind simply cannot accept Dr. Nabors' testimony as a whole as substantial competent medical evidence that Claimant cannot perform his pre-injury position." (Employer's Br. at 25.) In addition, Employer asserts that the WCJ erred in granting temporary, partial disability benefits based on Employer's alleged transfer of Claimant from the service technician position to the OPT position. Employer contends that, in this regard, Claimant's "testimony was equivocal and all over the place," *id.* at 33, and thus, was "not based on substantial competent evidence." *Id.* at 35.

To obtain reinstatement of benefits, a claimant must establish that "his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010). In a reinstatement proceeding, a claimant is entitled to a presumption that his original work-related injury still persists, and "a claimant does not have to re-establish the causal relationship, *i.e.*, job relatedness, of [that] injury."

---

[1] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 261 n.3 (Pa. Cmwlth. 2006).

[2] By order dated January 6, 2020, this Court precluded Claimant from filing an appellate brief in this matter because he failed to comply with the time limitations imposed by a previous order. Nonetheless, Claimant filed a brief on February 4, 2020. By order dated February 12, 2020, this Court struck the brief from the record because Claimant did not file an application for leave to file a brief *nunc pro tunc* and provided no explanation as to its untimeliness.

8

*Hinton v. Workers' Compensation Appeal Board (City of Philadelphia)*, 787 A.2d 453, 456, n.7 (Pa. Cmwlth. 2001).

However, the claimant must affirmatively prove that the present or new disability is causally related to original work injury, *Dougherty v. Workers' Compensation Appeal Board (QVC, Inc.)*, 102 A.3d 591, 595 (Pa. Cmwlth. 2014), — *i.e.*, "that it is the work-related injury which is causing his [] present disability." *Hinton*, 787 A.2d at 456. In a similar vein, a WCJ may grant a review petition and amend an NCP to include an additional injury if a claimant can carry the burden of proving, with competent and credible evidence, that the injury subsequently arose as a consequence of the original injury and is work related. *Harrison v. Workers' Compensation Appeal Board (Auto Truck Transport Corp.)*, 78 A.3d 699, 704 (Pa. Cmwlth. 2013). Unless the causal connection between a new or different injury and the accepted work injury is obvious, the claimant must present unequivocal medical evidence of causation. *City of Pittsburgh v. Workers' Compensation Appeal Board (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011).

Here, in granting the review petition, the WCJ credited Dr. Nabors' testimony and determined "that the [NCP] should be amended to include [a] left knee overuse condition as a result of weakness in the opposite right leg due to the work injury." (F.F. at No. 17; *see also* F.F. at No. 11f-g.) This finding is supported by substantial evidence and establishes that Claimant's left knee injury was causally related to his original work injury of a low back strain. Therefore, we conclude that the WCJ did not err in amending the NCP to add a left knee condition as one of Claimant's work-related injuries. *See Huddy v. Workers' Compensation Appeal Board (U.S. Air)*, 905 A.2d 589, 592-93 (Pa. Cmwlth. 2006) (stating that an NCP should be

amended where the claimant proves that his disability has increased and that the original work-related injury caused the amending injury).

In addition, Dr. Nabors testified credibly that, given the then-current state of Claimant's capacity to perform physical labor, he "did not believe [Claimant] could perform the full-duty [work] as a service technician for an extended period of time." (F.F. at No. 11e.) Viewing the evidence in the light most favorable to Claimant, as we must, Dr. Nabors' testimony established that if Claimant continued to work as a service technician, he "would be more likely to reinjure himself." (F.F. at No. 11i.)[3] The WCJ also found, as a matter of fact, that after sustaining his work-related injury, Claimant performed the service technician position "with pain due to his motivation to return to work for Employer." (F.F. at No. 16.)

Notably, "[o]ur law of Workers' Compensation does not require an employee to bear the risk of [a] probable severe and totally disabling re[-]injury by return to heavy work on pain of foregoing all compensation." *Jasper v. Workmen's Compensation Appeal Board (Teledyne Columbia/Summerrill)*, 445 A.2d 1212, 1214 (Pa. 1982). In *Crowell v. Workmen's Compensation Appeal Board (Johnson Dairy Farm)*, 665 A.2d 30 (Pa. Cmwlth. 1995), the claimant's treating physician testified that he approved the claimant's return to light-duty work with medical restrictions. The physician further testified that, although the claimant could physically perform his previous duties of a farm hand, the performance of those duties would not only cause

---

[3] We note that "[a] medical witness's use of words such as [] 'likely' [] will not render an opinion equivocal so long as the testimony, read in its entirety, is unequivocal," *Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011), and the testimony will be deemed competent evidence "even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details." *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132, 135 (Pa. Cmwlth. 1983).

10

him significant pain, but the lifting involved in that position could cause the claimant to fall, injuring himself or others.

On appeal, this Court determined that the claimant remained disabled and reiterated that "a claimant who cannot perform his former work duties without pain *is* still disabled." *Id.* at 33 (emphasis in original). We stated that "it is inherently unfair and contrary to the humanitarian purpose underlying the Workers' Compensation Act[4] to force any claimant to choose between receiving no benefits at all and returning to the work force under conditions which will cause him continuing pain and may potentially cause him further injury." *Crowell*, 665 A.2d at 33. In sum, we concluded:

> [T]he WCJ found that the [c]laimant would continue to experience pain if he were to return to his prior occupation as a farm hand. The fact that despite this pain, [the] [c]laimant may be physically capable of performing his former duties does not diminish the fact that he continues to be disabled. Therefore, the WCJ was in error when he refused to grant [the] [c]laimant's reinstatement petition.

*Id.*[5]

Applying the rationale and holding of *Crowell* here, we conclude, contrary to Employer's assertions, that Claimant was not legally obligated to continue working in his pre-injury job as a service technician, and he is not precluded from obtaining a reinstatement of benefits, simply because he was able to perform that position for three

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1041.4, 2501-2710.

[5] Similarly, in *Modern Cooler Co. v. Workmen's Compensation Appeal Board (Driscoll)*, 333 A.2d 811 (Pa. Cmwlth. 1975), this Court concluded that after the claimant's treating physician surgically repaired the claimant's torn rotator cuff, the claimant returned to work his pre-injury job at the same wage rate. The treating physician, however, testified that, although the surgery was successful, "the claimant would risk losing [his] benefit if he were to be subjected to constant exertion" by lifting heavy objects. *Id.* at 814. In light of this credible testimony, we concluded that the claimant was entitled to partial disability benefits.

months after sustaining the work-related injury. Notably, Claimant testified that when he returned to work as a service technician, he experienced significant pain. The WCJ also rejected Dr. Seel's testimony that Claimant was capable of returning to work to this pre-injury job without medical restrictions and credited Dr. Nabors' testimony that Claimant, even with medical restrictions, would not be able to work as a service technician "for an extended period of time." (F.F. at No.11e.)

Moreover, and generally speaking, "if the injured employee returns to a job making less than his pre-injury wages, [] the employee is entitled to partial disability." *Palaschak v. Workers' Compensation Appeal Board (US Airways)*, 35 A.3d 1242, 1247-48 (Pa. Cmwlth. 2012) (citing *Eljer Industries v. Workers' Compensation Appeal Board (Evans)*, 707 A.2d 564, 568 (Pa. Cmwlth. 1998)).[6] More specifically, a claimant whose post-injury earnings are less than the pre-injury earnings is entitled to a partial disability benefit if the reduction in earnings, or loss of earning power, is attributable or casually related to the work injury. *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 658 A.2d 766, 769 (Pa. 1995).

Here, the WCJ's findings of fact reflect that, following his work-related injury and attendant medical treatment, Claimant performed the service technician job for three months "with pain due to his motivation to return to work for Employer until he was able to work out a solution that he is capable of performing on a more long-term basis and allows for assistance from others if necessary." (F.F. at No. 16.) Claimant's testimony, which was credited by the WCJ, demonstrated "that the service technician job is far more physically demanding than the [OPT] position," (F.F. at No. 10f), and "that he had numerous conversations with [Employer about] workplace

---

[6] Our decision in *Palaschak* was disapproved on other grounds in *Cozzone ex rel. Cozzone v. Workers' Compensation Appeal Board (Pennsylvania Municipal/East Goshen Township)*, 73 A.3d 526, 538-39 (Pa. 2013).

accommodations to assist him in finding a different job within the company that he was able to do." (F.F. No. 10j.) The WCJ also found Claimant's testimony recounting "his conversations with [] Employer regarding [his return] to a position that might better accommodate him following his significant injury to be credible." (F.F. at No. 14.) Ultimately, the WCJ concluded that Claimant proved that "through no fault of his own, his earning power [was] once again adversely affected by the disability," "that as a result of the work injury, he accepted a less demanding [OPT] position," and "that he now suffers a wage loss." (F.F. at No. 18; C.O.L. at No. 3.)

Based on the facts as found by the WCJ, we discern no error in the WCJ's conclusions that Claimant could not perform his pre-injury job as a service technician for a relatively lengthy period of time, and that for this reason, alone, Employer offered Claimant the OPT position. Because the OPT position was markedly less demanding than the service technician job, in terms of physical exertion, Claimant accepted Employer's offer to work in the OPT position, and the transfer/move undisputedly resulted in a loss of wages, we conclude that the WCJ did not err in granting Claimant's reinstatement petition.

Employer's bald assertions that the testimonies of Claimant and Dr. Nabors were incompetent and equivocal are also unavailing. Employer contends that Dr. Nabors agreed that Claimant returned to work as a service technician for three months following the injury and conceded that this would "be long enough of a trial [period] to determine whether [Claimant] could do that job." (Employer's Br. at 24) (quoting Reproduced Record (R.R.) at 76a). However, Dr. Nabors never admitted that Claimant could actually continue to perform the service technician position after those three months and, as mentioned above, testified credibly that Claimant could only work in that position for a limited period of time.

13

Employer also speculates that Dr. Nabors' testimony "was based on Claimant telling Dr. Nabors [what] he needed to say." (Employer's Br. at 29.) Further, Employer asserts that "Claimant never submitted a single shred of documentary evidence to show that his transfer into the OPT job was an accommodation," *id.* at 33, and points to Constable's affidavit which stated that "Claimant was not placed in the position as a result of an accommodation request." *Id.* at 34 (citing R.R. at 102a-04a). However, the WCJ rejected Employer's evidence as less credible and persuasive than the testimony of Claimant and Dr. Nabors. (F.F. at Nos. 14-15.)

Ultimately, Employer's assertions above pertain to the credibility and weight of the evidence, not its competency. It is a fundamental tenet of workers' compensation law that the WCJ, as the fact-finder, has complete authority over questions of witness credibility and evidentiary weight. *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Accordingly, the WCJ has exclusive province over credibility and weight determinations, and may accept or reject the testimony of any witness, in whole or in part. *Id.* at 1162. Because Employer seeks to impugn the WCJ's determinations regarding the credibility and weight to the accorded evidence, and we have no legitimate basis on this record to upset those determinations, we conclude that Employer's arguments lack merit.

To the extent that Employer maintains that the WCJ erred in failing to find the affidavit credible, and failed to issue a "reasoned decision" for his credibility determination, (Employer's Br. at 35), the WCJ stated that he found Claimant credible based on his demeanor while testifying. (F.F. at No. 14.) Standing alone, this explanation satisfies the reasoned decision requirement and is sufficient to resolve the conflict in evidence between Claimant's testimony and Employer's affidavit. *See PPL*

14

*v. Workers' Compensation Appeal Board (Rebo)*, 5 A.3d 839, 445 (Pa. Cmwlth. 2010). Consequently, we reject Employer's contention to the contrary.

Additionally, Employer generally maintains that Dr. Nabors' "testimony was based on guessing, conjecture[,] and assumptions." (Employer's Br. at 29.) More specifically, Employer asserts that Dr. Nabors provided deposition testimony on June 14, 2017, but that he had not examined or seen Claimant since February 3, 2016 (a time gap of approximately 16 months). Employer then points to the following facts that occurred since the last time Dr. Nabors examined Claimant: on March 29, 2016, Dr. Nabors wrote a note indicating that Claimant was disabled from all gainful employment; on April 13, 2016, Dr. Nabors provided work restrictions of lifting up to 50 pounds, occasional climbing, and the ability to change position frequently; on June 30, 2016, Claimant returned to work at his pre-injury position with these medical restrictions and worked at that position for approximately three months until October 2, 2016; and, on October 2, 2016, Dr. Nabors released Claimant to perform the OPT position without restrictions. Further, Employer asserts that Dr. Nabors had incomplete medical records, failed to prescribe an MRI of the left knee, failed to conduct an adequate number of examinations, and, overall, conducted a faulty differential diagnosis.

"The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012). "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Id.* An expert opinion is also not competent to establish causation when "it is based upon a series of assumptions that lack a factual predicate." *City of Philadelphia*

15

*v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 770 (Pa. 2011). Somewhat similarly, where "an expert's opinion is dependent upon information that is inaccurate or lacks support in the record, it is deemed incompetent." *Id.* at 770 (citation and parenthetical omitted).

At the same time, this Court has held that, when considering the evidentiary basis for an expert's opinion, a medical opinion is rendered incompetent only if it is based solely on inaccurate or false information. *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 2007); *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). Here, Employer does not cite to any information upon which Dr. Nabors relied to formulate his expert opinion that was either false, inaccurate, or unsupported by the evidence of record. Notably, in a series of decisions, this Court has concluded that the fact that an expert does not have all of the claimant's medical records, or fails to review them or the claimant's job descriptions, or does not know all of the details of the mechanics of the claimant's injury, are matters that go to the weight to be given to the expert's testimony, not its competency. *See, e.g.*, *Degraw*, 926 A.2d at 1001; *Samson Paper Co. & Fidelity Engraving v. Workers' Compensation Appeal Board (Digiannantonio)*, 834 A.2d 1221, 1224 (Pa. Cmwlth. 2003); *American Contracting Enterprises*, 789 A.2d at 396. Similarly, allegations that an expert did not conduct enough physical examinations of a claimant or failed to order additional diagnostic testing are matters that pertain to the weight of the evidence, and not its competency. *Berger v. Workers' Compensation Appeal Board (Lehigh University)* (Pa. Cmwlth., No. 907 C.D. 2014, filed January 18, 2015) (unreported), slip op. at 13 n.4;[7] *Coyne v. Workers'*

---

[7] We cite unreported decisions of this Court for their persuasive value in accordance with section 414(a) of our Internal Operating Procedures. 210 Pa. Code §69.414(a).

*Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 955 (Pa. Cmwlth. 2008); *Workmen's Compensation Appeal Board (Bethlehem Steel) v. Czepurnyj*, 340 A.2d 915, 919 (Pa. Cmwlth. 1975). Finally, while most of Employer's contentions above challenge Dr. Nabors' diagnostic methodology in imposing, altering, and removing Claimant's work restrictions, such issues lie at the core of a credibility determination. *Ovid v. Workers' Compensation Appeal Board (Dolgencorp, LLC)* (Pa. Cmwlth., No. 333 C.D. 2018, filed November 29, 2018) (unreported), slip op. at 19; *Parkview Court Associates v. Delaware County Board of Assessment Appeals*, 959 A.2d 515, 521 (Pa. Cmwlth. 2008).

As such, it is apparent that Employer's arguments are, in reality, challenges to the WCJ's credibility and weight determinations. Absent extraordinary circumstances, which are not present here, these determinations are within the exclusive province of the WCJ and are unassailable on appeal. Nevertheless, we note that Dr. Nabors was Claimant's surgeon, and up until February 3, 2016, he "continued to provide post-operative care to Claimant, including frequent re-evaluation of the right leg, as well as pain in the back and leg, and subsequently left knee pain." (F.F. at No. 11b.) We further note that, as found by the WCJ, Claimant experienced a significant decrease in pain as a result of Dr. Nabors' medical treatment; Dr. Nabors discussed the duties of the service technician job and OPT position with Claimant; and Claimant advised Dr. Nabors that he felt he was capable of performing the OPT position. (F.F. at No. 11c, d, h.) Consequently, we find no merit in Employer's overriding contentions that Dr. Nabors was not qualified to render an expert opinion or that he lacked a factual predicate for his opinions concerning Claimant's medical conditions and corresponding ability to perform the duties associated with those positions.

17

Therefore, having found that the WCJ did not err in granting Claimant's review and reinstatement petitions, we affirm the order of the Board affirming the WCJ.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Verizon Pennsylvania, LLC,       :
              Petitioner    :
                        :   No. 1153 C.D. 2019
        v.              :
                        :
Workers' Compensation  Appeal  :
Board (Murray),            :
             Respondent  :

## _**ORDER**_

AND NOW, this 11th day of May, 2020, the August 1, 2019 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge